**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH K. WILLIAMS** | : | |
| | : | **CIVIL ACTION NO. 1:CV-03-2339** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| | : | |
| **CITY OF HARRISBURG, et al.** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Before the Court are Defendants Motions for Summary Judgment (Doc. Nos. 47 and 50) and responsive pleadings thereto. The motions have been fully briefed and are ripe for disposition. For the reasons discussed below, the Commonwealth Defendants' motion will be granted and the City Defendants' motion will be denied.

## I. Background[1]

Plaintiff Joseph Williams is an African American employed by Defendant City of Harrisburg ("Harrisburg") as a firefighter under Harrisburg's Department of Public Safety Bureau of Fire ("Bureau of Fire") (collectively "City Defendants"). Sometime in 1990, City Defendants formed a special operational unit entitled Harrisburg Rescue One, which consisted of Harrisburg fire personnel trained in rope and confined space rescues. (Doc. No. 55-3 at 16.) Harrisburg firefighters served on Harrisburg Rescue One at the pleasure of Fire Chief Donald Konkle and were coordinated by Battalion Chief Dan

---

[1] The following are undisputed facts taken from the parties' Statements of Undisputed Material Facts and the exhibits therewith, unless otherwise indicated. (Docs. No. 48, 51, 61 and 62.)

Hartman, who also commanded Platoon B of the Harrisburg Fire Department. (Doc. No. 56-4 at 3-4.) As a Harrisburg firefighter assigned to Platoon B, Plaintiff served under both Fire Chief Konkle and Battalion Chief Hartman's command. Id. at 4. At some unspecified date prior to 2000, Plaintiff applied and was approved to join Harrisburg Rescue One.

On June 4, 2001, Plaintiff was also appointed to the Pennsylvania Urban Search and Rescue, PA Task Force One ("Task Force One"), a specialized task force coordinated through the Pennsylvania Emergency Management Agency ("PEMA") (collectively "Commonwealth Defendants") and the Federal Emergency Management Agency ("FEMA"). Although PEMA has operational control over Task Force One, Plaintiff was chosen and paid by City Defendants. Battalion Chief Hartman also served as Task Force Leader over the Harrisburg members of Task Force One. (Doc. No. 56-4 at 4.)

In response to the September 11, 2001 attacks, FEMA activated Task Force One and deployed members of the Harrisburg Bureau of Fire and other participating organizations to New York City. During the deployment, Chief Hartman received numerous complaints about Plaintiff's job performance and overuse by Plaintiff of his cellular telephone. Thereafter, Chief Hartman removed Plaintiff from the forward operational base for the remainder of the deployment. On October 30, 2001, Fire Chief Konkle gave Plaintiff a copy of an interoffice memorandum written by Battalion Chief Hartman, wherein Chief Hartman discusses the complaints he received about Plaintiff during the deployment. Bureau of Fire Deputy Chief Tim Sevison thereafter suspended Plaintiff from Task Force One and Harrisburg Rescue One pending a hearing. In early November 2001, a hearing was scheduled to discuss, inter alia, Plaintiff's job performance while in New York City. Plaintiff failed to

attend the meeting. Accordingly, Fire Chief Konkle separated Plaintiff from Task Force One and Harrisburg Rescue One. At the time, there were no written procedures indicating what steps to take when an individual was being considered for suspension from the special operational units. Despite this separation, Plaintiff was not terminated from his firefighter position with the Bureau of Fire.

In his Complaint, Plaintiff asserts that these separations and prior unfair treatment were based solely upon his race. Accordingly, Plaintiff brings the present action under Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000(3), et seq., Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955, and City of Harrisburg Ordinance 105.1(1).

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the

moving party has shown that there is an absence of evidence to support the non-moving party's claims, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The evidence must be viewed in the light most favorable to the non-movant. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322. "In FOIA cases, the courts may, and often do, grant summary judgment on the basis of government affidavits or declarations that explain how requested information falls within a claimed exemption, as long as the affidavits or declarations are sufficiently detailed, non-conclusory, and submitted in good faith, and as long as the plaintiff has no significant basis for questioning their reliability." Jefferson v. Reno, 1997 U.S. Dist. LEXIS 3064 (D.D.C. 1997) (citing Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and can be brought by any party after the pleadings are closed. Regalbuto v. City of Philadelphia, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995). In deciding a rule 12(c) motion, the Court must view all facts and inferences drawn from the pleadings in the light most favorable to the non-moving party. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993) (citation omitted). The Court may not grant judgment on the pleadings unless it is clearly

established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Travelers Indemnity Co. v. Stedman, 895 F. Supp. 742, 745-46 (E.D. Pa. 1995).

## III. Discussion

In their Motion for Summary Judgment sub judice, Commonwealth Defendants argue that summary judgement in their favor is proper because they were not "employers" of Plaintiff for purposes of Title VII. (Doc. No. 57.) City Defendants argue in their Motion for Summary Judgment that Plaintiff did not have any employment relationship with the special operational units he was removed from and that they are entitled to summary judgment as a matter of law on Plaintiff's claims of racial discrimination. The Court will address each argument in turn.

### A. Employment Status

In determining whether an organization has the necessary relationship with a plaintiff to be liable under Title VII, the Third Circuit looks to "the level of control an organization asserts over an individual's access to employment and the organization's power to deny such access." Graves v. Lowery, 117 F.3d 723, 728 (3d Cir. 1997). "[A] plaintiff's status as an employee under Title VII can be determined only upon careful analysis of the myriad facts surrounding the employment relationship in question." Id. at 729 (quoting Miller v. Advanced Studies, 635 F.Supp. 1196 (N.D. Ill. 1986)). Commonwealth Defendants allege, with reference to the record, that Plaintiff was not an "employee" of either PEMA or Task Force One. (Doc. No. 57 at 3.) It was Harrisburg's responsibility to recruit, organize, develop, and train task members according to FEMA guidelines, and handle all administrative, financial, and personnel management with regard to their respective task force members.

Moreover, neither PEMA nor Task Force One had any role in deciding whether to accept applicants to Task Force One or terminate them. Plaintiff does not dispute this, nor make any objections whatsoever to Commonwealth Defendants' Motion for Summary Judgment. Accordingly, the Court will grant Commonwealth Defendants' motion and dismiss Counts V and VII of the Complaint.

City Defendants argue that Plaintiff's discrimination claims arising out of his termination from Harrisburg Rescue One and Task Force One fail as a matter of law because participation in both of these "special operational units [was] strictly voluntary." (Doc. No. 58 at 7.)
Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Accordingly, many courts have held that volunteers who do not receive any compensation or benefits are not "employees" for Title VII purposes. See e.g. O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997) (holding that remuneration is an "essential condition" of employment, and a volunteer, who did not receive compensation, was not an "employee" under Title VII); Smith v. Berks Community Television, 657 F. Supp. 794, 795-96 (E.D. Pa. 1987) (holding that an individual that volunteered at a television studio, and received no compensation or fringe benefits, was not an employee under Title VII).

While it is true that participation in the units was not mandatory, participants nevertheless received a salary for the hours they spent training and while on call as members of these specialized teams. (Doc. Nos. 56-4 at 6; 55-2 Ex. A.) City Defendants attempt to distance themselves from the two task forces, however the record demonstrates that Plaintiff was paid his normal firefighter salary by City Defendants during his participation in these task forces and was under the supervision of Bureau of Fire employees. (Doc. No. 56-4 at 5-6.) In fact, Plaintiff would participate in the task forces during

his normal work shift at the Bureau of Fire. (Doc. No. 55-3 at 45-47, 50.) The choice to join is voluntary, not the work itself. Firefighters who are selected for Harrisburg Rescue One and Task Force One are akin to employees moving from one department in a company to another, rather than voluntary activity, such as, participating in an after-hours company softball league. Accordingly, the Court finds that, as a matter of law, Plaintiff was not acting as a volunteer, for the purposes of Title VII, while participating for Harrisburg Rescue One and Task Force One.

**B. Disparate Treatment**

The Supreme Court set forth the analytical framework for employment discrimination cases based on circumstantial evidence in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973).[2] Pursuant to the McDonnell Douglas framework, a plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000) (citations omitted). To establish a prima facie case for discriminatory discharge, a plaintiff must show that: (1) he is a member of a protected class; (2) that he was subject to an adverse employment action; and (3) that similarly situated members of other racial classes were treated more favorably. See Jones v. School Dist., 198 F.3d 403, 411 (3d Cir. 1999). An adverse employment action has been defined by the Supreme Court as:

> [a] tangible employment action constitut[ing] a significant change in employment

---

[2] Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

> status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. . . . A tangible employment action in most cases inflicts direct economic harm.

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998). The Third Circuit Court of Appeals has defined an "adverse employment action" under Title VII as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations omitted).

If a plaintiff presents a prima facie case of discrimination, the defendant must articulate some legitimate, nondiscriminatory reason for its actions. Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000) (internal quotations omitted). This burden is only one of production, not of persuasion; it involves no credibility assessment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). Finally, if the defendant articulates such a reason, the plaintiff must establish that the defendant's proffered reasons for the discipline was pretextual. Id. Thus, if the plaintiff establishes a prima facie case of discrimination, and defendant articulates a non-discriminatory reason for each adverse employment action, the plaintiff may survive summary judgment only if he presents enough evidence rebutting the employer's proffered legitimate reasons so as to allow a reasonable factfinder "to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citation omitted).

With regard to Plaintiff's pendant state claims under the Pennsylvania Human Relations Act ("PHRA") and ordinances of the City of Harrisburg, claims of employment discrimination under Title VII and the PHRA are similarly evaluated in accordance with the McDonnell Douglas framework. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (applying the McDonnell Douglas analysis to PHRA claim).

As an African American, Plaintiff clearly is a member of a protected class. The record is not as clear with regard to the second prima facie requirement of an adverse employment action. Removal from Harrisburg Rescue One and Task Force One, by itself, does not establish an adverse employment action unless the removal also results in an alteration of Plaintiff's compensation, terms, conditions, or privileges of employment. Storey, 390 F.3d at 764. Since Plaintiff remains employed as a Harrisburg firefighter, removal from the specialized teams is not an adverse employment action unless the removal resulted in lower pay, less benefits, less opportunity for overtime, considerably worse working conditions, a "dead-end" position within the organization, or some other tangible adverse change in Plaintiff's employment status, which would rise to the level of an adverse employment action for purposes of Title VII. See e.g. Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 787 (3d Cir. 1998) (finding that a transfer to an "undesirable shift" that left the plaintiff with "none of the customary free time" he was accustomed to was sufficient for a prima facie case). However, City Defendants neither argue this point nor demonstrate that no genuine issue of material fact exists regarding this issue. Therefore, for the purposes of this Order, the Court will assume, arguendo, that Plaintiff suffered an adverse employment action.

Lastly, Plaintiff must show that similarly situated individuals of other racial classes were treated

more favorably. City Defendants' cited reasons for dismissing Plaintiff after the deployment at the World Trade Center tragedy were Plaintiff's unreliability and lack of motivation, in particular, Plaintiff's reported overuse of his cell phone and reluctance to "pitch in and help out." (Doc. No. 58 at 11-12.) In response to City Defendants' evidence, Plaintiff points to deposition testimony from other Task Force One firefighters who had worked with Plaintiff during the World Trade Center aftermath. This testimony indicates that cell phones had been given out to various members of the task force and firefighters were encouraged to keep in touch with family members at home. (Depositions of Donald Pelton and Doug Bair, Doc. No. 65 at 40 and 56-58.) Firefighter Donald Pelton testified that "75 percent of the time there was not a lot to do[]" wherein most firefighters "[tried] to get some sleep for one thing. We didn't get much sleep at all, trying to rest, trying to clean tools up to get ready for the other deployments, of course, talking on cell phones to family members, talking back and forth from Task Force members to Task Force members for the next event." (Doc. No. 65 at 40.) Pelton also testified that he did not recall seeing Plaintiff talking on his cell phone during the deployment. Id. at 40-41. Firefighter Bair testified that, based upon his observations of Plaintiff during the deployment, Plaintiff "looked motivated. He seemed motivated to me when I dealt with him." (Doc. No. 65 at 53.)

Based upon the abovementioned testimony, viewed in a light favorable to Plaintiff, it appears that a question of material fact exists as to whether Plaintiff's performance during the World Trade Center deployment was inferior to the performance of the other firefighters, none of whom where reported or disciplined. If the above testimony is believed, a reasonable jurist could find that Plaintiff's behavior was unfairly scrutinized and criticized by his superiors, as compared to similarly situated

firefighters, due to Plaintiff's race; in essence, that even though the other white task force members used their phones heavily as well, only Plaintiff, the sole African-American member on the team, was disciplined. For the same reasons, Plaintiff offers sufficient evidence that a reasonable jurist could find that Defendants' proffered reasons for the discipline were pretextual. Accordingly, as disputed issue of material fact exist, City Defendants' Motion for Summary Judgment will be denied.

## IV. Order

**AND NOW**, this 23rd day of September, 2005, for the reasons discussed above, **IT IS HEREBY ORDERED THAT** the Commonwealth Defendants' Motion for Summary Judgment (Doc. No. 47) is **GRANTED**. Counts V and VII of Plaintiff's Complaint (Doc. No. 1) are **DISMISSED**. **IT IS FURTHER ORDERED THAT** the City Defendants' Motion for Summary Judgment (Doc. No. 50) is **DENIED**. The Clerk of Court will defer entering judgment on Counts V and VII of the Complaint until the resolution of the action.

**IT IS FURTHER ORDERED THAT** this Court's Stay Order (Doc. No. 60) is **DISSOLVED**. The case management deadlines issued on June 02, 2004 (Doc. No. 37) are amended as follows:

| | |
|---|---|
| Local Rule 16.3: Attorney Conference and Exchange of Proposed Jury Instructions no later than: | 12/1/05 |
| Motions in Limine Due: | 12/5/05 |
| Pretrial Memoranda Due: | 12/15/05 |
| Pretrial and Settlement Conference: | 12/20/05 @ 2pm |
| Proposed Jury Instructions with Objections and Proposed Voir Dire Questions Due: | 1/4/06 |
| Trial Brief Due: | 1/4/06 |
| Jury Selection and Trial: | 1/9/06 |

S/ Yvette Kane
Yvette Kane
United States District Judge